# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN L. HERKNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-06-2491 |
| | § | |
| ARGO-TECH CORPORATION | § | |
| COSTA MESA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Kevin Herkner sued his former employer, Argo-Tech Corporation Costa Mesa ("Argo- Tech"), asserting state-law claims for breach of contract, wrongful termination, fraud, and promissory estoppel arising out of Argo-Tech's insistence that Herkner move from Texas to California. This court granted Argo-Tech's summary judgment motion as to Herkner's claims for wrongful termination, fraud, and promissory estoppel. Herkner's remaining claim for wrongful denial of a severance payment was tried before a jury on February 25–28, 2008. The jury found in Herkner's favor and awarded him $125,798.40 in damages.

Herkner now moves to recover his attorney's fees under Section 38.001 of the Texas Civil Practice and Remedies Code. (Docket Entry No. 64). Herkner also seeks to recover his costs and prejudgment interest. Argo-Tech has responded, (Docket Entry No. 65); Herkner has replied, (Docket Entry No. 66); Argo-Tech has surreplied, (Docket Entry No.

67); Herkner has responded to the surreply, (Docket Entry No. 68); and Argo-Tech has

replied to Herkner's response to the surreply, (Docket Entry No. 69).

Based on a careful review of the motion, the responses and replies, the record, and the

applicable law, this court grants in part and denies in part Herkner's motion for attorney's

fees, costs, and prejudgment interest.  The reasons for these rulings are set out below.

## I.     Analysis

The primary issue is what law applies to the attorney's fee claim.  Argo-Tech argues

that Ohio law applies because the parties' severance agreement contains a choice-of-law

provision specifying Ohio law.  The provision states:

> The validity, interpretation, construction, and performance of
> this Agreement shall be governed by the laws of the State of
> Ohio, without giving effect to the principles of conflict of laws
> of such State.

(Docket Entry No. 65, Ex. 1-B at 4).  Herkner argues that the choice-of-law provision limits

the applicability of Ohio law to the "validity, interpretation, construction, and performance"

of the severance agreement and "does not address remedies for nonperformance or the

recovery of attorney's fees." (Docket Entry No. 66 at 3).  Herkner contends that Texas

choice-of-law rules apply and that because Ohio has no substantial relationship to the parties

or the transaction, Texas law on awarding attorney's fees applies.[1]

_____

[1] Herkner argues that "[a]ny and all evidence and argument relating to the application of Ohio
law regarding fees, costs, and interest should be excluded because these arguments were not raised
at the appropriate time, and not disclosed in a timely fashion under the applicable rules."  (Docket
Entry No. 66 at 5).  To support this argument, Herkner contends that Argo-Tech failed to disclose
that it intended to present certain experts on whether Ohio law applies to this case and whether

"The award of attorney's fees is governed by the law of the state whose substantive law is applied to the underlying claims." *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005) (quoting *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000)). As noted, the parties' Severance Agreement contains a choice-of-law provision stating that Ohio law will govern the validity, interpretation, construction, and performance of the Agreement. The parties both referred to Ohio law in their proposed applicable propositions of law in the joint pretrial order. If the choice-of-law provision in the parties' Severance Agreement is enforceable, Ohio law will govern the award of attorney's fees.

Whether Ohio or Texas law applies to this issue makes a difference. "The general rule in Ohio is that, absent a statutory provision allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are

---

attorney's fees should be awarded. Herkner also asserts that the joint pretrial order fails to mention the application of Ohio law in this case in certain key sections, such as Argo-Tech's proposed statement of the case and Argo-Tech's contentions. Herkner argues that Argo-Tech's failure "to disclose the alleged application of Ohio law to this litigation and its effect on the recovery of attorney's fees" has prejudiced him. (Docket Entry No. 68 at 2).

Herkner's arguments are not persuasive. In its October 31, 2007 Memorandum and Order, this court noted that the parties' Severance Agreement contained a choice-of-law provision stating that Ohio law governed the agreement. (Docket Entry No. 37 at 5). This court further found that a fact issue as to the reasonableness of Argo-Tech's decision to require Herkner to relocate and noted that neither party had "identified how Ohio law differs from Texas law on the reasonableness of an employer's actions." (*Id.* at 29 n.2). In addition, Herkner referred to both Texas and Ohio law in his proposed applicable propositions of law in the joint pretrial order. (Docket Entry No. 45 at 7). The record shows that Herkner was aware of the choice-of-law provision in the Severance Agreement and had notice that Ohio law might apply to his claim for breach of the severance agreement. And the enforceability of a choice-of-law provision is a question of law for the court, not a question of fact. (*Id.* at 4).

taxed was found to have acted in bad faith." *State ex rel. Chapnick v. E. Cleveland City Sch. Dist. Bd. of Educ.*, 755 N.E.2d 883, 885 (Ohio 2001) (internal punctuation omitted) (quoting *State ex rel. Kabatek v. Stackhouse*, 451 N.E.2d 248, 249 (Ohio 1983)).  Texas law allows a prevailing plaintiff to recover attorney's fees in a breach of contract action.  TEX. CIV. PRAC. & REM. CODE § 38.001.

### A.    The Enforceability of the Ohio Choice-of-Law Provision

In diversity cases, district courts apply the choice-of-law rules of the forum state.  *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 306 (5th Cir. 2006) (citing *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004)).   The parties' Severance Agreement states that Ohio law will govern the validity, interpretation, construction, and performance of the Agreement.  (Docket Entry No. 65, Ex. 1-B at 4).  Texas has adopted the RESTATEMENT (SECOND) OF CONFLICT OF LAWS to determine the enforceability of contractual choice-of-law provisions.  *See DeSantis v. Wackenhut*, 793 S.W.2d 670, 677–78 (Tex. 1990).  Section 187 of the RESTATEMENT states:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

RESTATEMENT § 187.

Under section 187(2), the parties' contractual choice of Ohio law controls unless: 1) Ohio has no substantial relationship to the parties or the transaction; or 2) another state has a materially greater interest than Ohio in the enforceability of the agreement, and that state's law would apply "in the absence of an effective choice of law by the parties" under section 188. Section 188 states:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

RESTATEMENT § 188.

The parties dispute whether Ohio has a substantial relationship with the parties or the transaction. Argo-Tech argues that Ohio has a substantial relationship to the parties and the transaction because Argo-Tech's corporate headquarters is located in Ohio. Argo-Tech points out that its employee payroll operations that paid Herkner's salary are located in Ohio and that key corporate officers who made decisions relevant to Herkner's employment are located in Ohio. Herkner argues that under *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001), "[w]hen applying the substantial relationship test, it is not the quantity of contacts, but the qualitative nature of those contracts that controls" and that "[t]he only states with truly substantial connections to the parties are Texas and California." (Docket Entry No. 66 at 4). Herkner emphasizes that he was hired by and worked for Argo-

Tech in Texas and was required to relocate to California to work in Argo-Tech's Carter Ground Fueling Division in California.  Herkner points out that he "never visited or worked at the corporate headquarters in Ohio."  (*Id.* at 4).

Herkner's arguments and the record do not show that the parties' choice of Ohio law should be disregarded because that state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice.  The record shows that Ohio, where Argo-Tech had its corporate headquarters, did have a substantial relationship to Argo-Tech and to its employment relationships, including with Herkner.  The *Jackson* case does not support Herkner's position.  The *Jackson* court emphasized the quality rather than the quantity of a state's contacts with the parties or transaction in performing the "most significant relationship" analysis under RESTATEMENT section 188, which applies in the absence of the parties' effective choice of law.  *See Jackson*, 245 F.3d at 523; *accord Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) ("[I]n all choice of law cases, *except those contract cases in which the parties have agreed to a valid choice of law clause*, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." (emphasis added)).  In contrast, the choice-of-law analysis under section 187(2) does not focus on whether the chosen state has the most substantial relationship to the parties or the transaction in comparison to other states, but whether the chosen state has a substantial relationship.  Texas courts have found that a state has a substantial relationship to the parties or transaction if the defendant is headquartered

in that state and acts relating to the transaction occurred in that state.  *See, e.g.*, *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) (finding that Florida had a "substantial relationship" to the parties and transaction because the defendant's corporate offices were located there and "some of the negotiations" between the parties occurred there); *Direct Color Servs., Inc. v. Eastman Kodak Co.*, 929 S.W.2d 558, 562 (Tex. App.—Tyler 1996, writ denied) (finding that Massachusetts had "substantial relationship" with parties or transaction because defendants were incorporated in Massachusetts and the computer graphics imaging system at issue had been designed in Massachusetts); *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 725 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (finding that New York had a "substantial relationship" with the parties or transaction because New York was the location of the plaintiff's headquarters and principal place of business and several contracts relevant to the dispute were executed in New York).

Ohio has a substantial relationship to the parties and the transaction.  Argo-Tech is headquartered there and key decisions relating to Herkner's employment were made there. It is reasonable for a corporation to choose the law of the state in which it is headquartered. *See Salazar v. Coastal Corp.*, 928 S.W.2d 162, 167 (Tex. App.—Houston [14th Dist.] 1996, no pet.) ("The state where a company has its principal place of business has a reasonable relationship to the parties and transaction.") (citing *Chase Manhattan Bank*, 835 S.W.2d at 725; *First Commerce Realty Investors v. K-F Land Co.*, 617 S.W.2d 806, Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)).

Herkner contends that "it controverts public policy to deny Mr. Herkner his right to recover attorney's fees for prosecuting his claims against Argo-Tech," but cites no source of such a public policy to support this argument.[2]  (Docket Entry No. 66 at 7).  The cases do not articulate such a policy.  To the contrary, "Texas courts frequently deny attorney's fees if prohibited by the state law designated by contractual choice-of-law provisions."  *Smith v. EMC Corp.*, 393 F.3d 590, 598 (5th Cir. 2004) (citing *Rapp Collins Worldwide, Inc. v. Mohr*, 982 S.W.2d 478, 487–88 (Tex. App.—Dallas 1998, no pet.); *Bergstrom Air Force Base Fed. Credit Union v. Mellon Mortgage, Inc.–East*, 674 S.W.2d 845, 850 (Tex. App.—Tyler 1984, writ ref'd n.r.e)); *accord Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 537 n.7 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (noting that Texas case law "in which the courts have acknowledged that parties are free to adopt a more liberal (or more strict) standard for recovery of attorney's fees in their contract than is statutorily provided" weighs against finding a fundamental public policy requiring the application of Texas law).

Because Ohio has a substantial relationship to the parties and the transaction, a reasonable basis exists for the parties' choice of Ohio law, and the application of Ohio law would not contravene a fundamental public policy of Texas, Ohio law governs the award of attorney's fees.

---

[2]Although Herkner contends that both California and Texas have a substantial relationship to the parties and transaction, he argues that Texas law should apply to the award of attorney's fees. Herkner does not contend that California has a materially greater interest than Ohio in the award of attorney's fees or that applying Ohio law would contravene a fundamental California public policy.

### B.    Attorney's Fees Under Ohio Law

"The general rule in Ohio is that, absent a statutory provision allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith."  *State ex rel. Chapnick v. E. Cleveland City Sch. Dist. Bd. of Educ.*, 755 N.E.2d 883, 885 (Ohio 2001) (internal punctuation omitted) (quoting *State ex rel. Kabatek v. Stackhouse*, 451 N.E.2d 248, 249 (Ohio 1983)).  Herkner does not identify a statutory provision allowing attorney's fees as costs.  Rather, he argues that this court may award attorney's fees because Argo-Tech acted in bad faith.  Relying on the jury's determination that "Argo-Tech terminated [him] without cause and failed and refused to deliver [his severance] payment to [him] within thirty (30) days following termination," Herkner contends that "the attorney's fees [that he seeks] in this case could have been avoided if Argo-Tech had acted in good faith and complied with the terms of the Change in Control Severance Agreement."  (Docket Entry No. 66 at 10). Herkner further asserts that Argo-Tech "acted in bad faith by using pretext to terminate [his] employment and then pretextually justif[ying] the termination."  (*Id.* at 10).  Herkner argues that Argo-Tech required him to relocate to California to obtain additional training on Carter Ground Fuel products, but points out that Argo-Tech provided no such training program. Argo-Tech responds that Herkner's pretext argument is not supported by the record and points out that Herkner admitted he lacked sufficient knowledge of Carter Ground Fuel products.

Under Ohio law, a losing party has acted in bad faith if the party has acted "vexatiously, wantonly, obdurately, or for oppressive reasons." *Westfield Cos. v. O.K.L. Can Line*, 804 N.E.2d 45, 54–55 (Ohio Ct. App. 2003). Herkner's argument that Argo-Tech acted in bad faith because the jury determined that Argo-Tech terminated his employment without cause proves too much. Under such reasoning, every prevailing party in a wrongful discharge suit would be able to show bad faith and recover attorney's fees under Ohio law. Herkner has not shown that Argo-Tech acted vexatiously, wantonly, obdurately, or for oppressive reasons when it asked Herkner to get training in Carter Ground Fuel Products and ultimately required him to relocate to California.

Because Herkner has not shown that a statutory provision allows the award of attorney's fees or that Argo-Tech acted in bad faith, he may not recover attorney's fees under Ohio law.

## C.    Expenses

Argo-Tech argues that Herkner's request for $7,027.75 in expenses is "excessive and includes $4,702.98 in 'expenses' that are not taxable pursuant to Federal Rule 54(d), 28 U.S.C. § 1920, and Fifth Circuit and federal case law." (Docket Entry No. 65 at 21). Citing 28 U.S.C. § 1920, Argo-Tech argues that Herkner's expenses for postage, Westlaw research, messenger deliveries, parking, lawyer travel, and mediator fees are not recoverable. Herkner does not respond to this argument.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that costs—other than attorney's fees—should be allowed to the prevailing party." There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir.2006). Title 28 U.S.C. § 1920 allows the following categories of costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Rule 54(d)(1) does not authorize a court to award costs not included in the statute. *Crawford Fitting Company v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–45 (1987) ("We hold that absent explicit statutory or contractual authorization . . . federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920).

The costs to which Argo-Tech objects are not listed in 28 U.S.C. § 1920 and courts have generally declined to include such costs in taxable costs. *See, e.g.*, *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.*, 491 F.3d 266, 274 (5th

Cir. 2007) (finding that "mediation costs do not fall within any of the categories of expenses listed in [section 1920]"); *Ducote Jax Holdings, L.L.C. v. Bank One Corp.*, No. 04-1943, 2007 WL 4233683 (E.D. La. Nov. 28, 2007) (holding that "[m]iscellaneous expenses such as postage, facsimiles, electronic legal research, travel expenses and attorney meals are not recoverable under § 1920"); *Javelin Invs., LLC v. McGinnis*, No. H-05-3379, 2007 WL 1003856, at *4 (S.D. Tex. Mar. 30, 2007) (noting that charges for Westlaw and Lexis computer-aided research "arguably are recoverable as attorney's fees" but "are clearly not taxable costs under § 1920"); *Noel Studio, Inc. v. Ewell*, No. 4:06-CV-208, 2006 WL 3317095, at *2 (E.D. Tex. Oct.30, 2006) (refusing to award postage costs); *Williams v. Thresholds, Inc.*, No. 02 C 9101, 2003 WL 22478784, at *2 (N.D. Ill. Oct.31, 2003) ("Under the Judicial Conference guidelines, delivery costs are considered ordinary business expenses and are not chargeable in relation to obtaining transcripts." (internal quotations and citation omitted)); *E.E.O.C. v. Allied Systems, Inc.*, No. 97-CV-1396, 1999 WL 395377, at *2 (N.D.N.Y. June 9, 1999) (declining to award delivery costs) (citing *Mass. Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1069 (D.C. Cir.1985)).

Argo-Tech asserts, and Herkner does not dispute, that Herkner's recoverable costs include filing fees, deposition costs, and process service costs and total $2,324.77.  Herkner may recover $2,324.77 in costs.

### D.     Prejudgment Interest

The parties' dispute over the applicable interest rate used to calculate prejudgment interest stems from their dispute over the applicable state law.  "Issues regarding pre-judgment interest in a diversity case are governed by applicable state law." *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 595 (5th Cir. 2006) (internal quotations omitted) (quoting *Canal Ins. Co. v. Gen. Ins. Co.*, 901 F.2d 45, 47 (5th Cir. 1990)).  Ohio law on the prejudgment interest rate governs.

Under Ohio law, prejudgment interest is "determined pursuant to section 5703.47 of the Revised Code." OHIO REV. CODE § 1343.03(A).  Section 5703.47 states that the rate, determined annually on October 15, will be the federal short-term rate set in July of the current year, "rounded to the nearest whole number per cent, plus three per cent." OHIO REV. CODE § 5703.47(B).  Argo-Tech asserts, and Herkner does not dispute, that Ohio's prejudgment rate for the October 15, 2007 to October 14, 2008 fiscal year is eight percent. (Docket Entry No. 65 at 24).[3]  Herkner is entitled to $17,756.59 in prejudgment interest.

---

[3]*See also* Administrative Journal Entry, Richard A. Levin, Tax Commissioner, *In the Matter of Determination of the Interest Rates Pursuant to R.C. 5703.47* (Oct. 15, 2007), *available at* http://tax.ohio.gov/divisions/ohio_individual/individual/documents/2008_Interest_Rate_Letter.pdf.

**II.     Conclusion**

Herkner's motion for attorney's fees, costs, and prejudgment interest is granted in part and denied in part.  Herkner may not recover attorney's fees.  Herkner may recover $2,324.77 in costs and $17,756.59 in prejudgment interest.

SIGNED on July 21, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge